|   |   |
|---|---|
| UNITED STATES DISTRICT COURT | |
| DISTRICT OF NEVADA | |

| | |
|---|---|
| Cell Film Holdings LLC, <br><br> Plaintiff <br><br> v. <br><br> Felix Acosta, et al., <br><br> Defendants | 2:16-cv-01853-JAD-VCF <br><br> **Order Granting Default Judgment Against Felix Acosta; Severing and Dismissing Claims Against All Other Defendants; and Closing Case** <br><br> [ECF No. 21] |

This is one of three essentially identical cases filed by plaintiff Cell Film Holdings LLC (CFH), in which CFH sues many unidentified Doe defendants—under a single filing fee—for separately infringing its copyright in the film "The Cell" by using BitTorrent software. CFH's practice in these cases is to move for expedited discovery to identify the defendants, and then systematically dismiss the defendants after failing to serve them or settling with them.[1]

I ordered CFH to show cause why I shouldn't sever all defendants except Felix Acosta, dismiss all claims against the remaining defendants without prejudice, and quash any subpoenas for discovery to the extent that they pertain to anyone other than Mr. Acosta.[2] Despite CFH's response, I find that this "swarm-joinder" practice is not only judicially inefficient, but improper under Federal Rule 20 because the defendants' actions do not arise out of the same transaction or occurrence. So I find that CFH did not show cause, I sever and dismiss all claims against all defendants except for Felix Acosta, and I quash any subpoenas for discovery that do not pertain

---

[1] *See generally* docket reports for *Cell Film Holdings LLC v. Acosta*, 2:16-cv-01853-JAD-VCF; *Cell Film Holdings LLC v. McCray*, 2:16-cv-02089-JAD-NJK; *Cell Film Holdings LLC v. Galang*, 2:16-cv-02142-JAD-VCF.

[2] ECF No. 23.

to Mr. Acosta.[3] I also grant CFH's motion for default judgment against Acosta, deny its request for default judgment against the other defendants, and close this case.

## Discussion

These copyright-infringement swarm-joinder cases against users of BitTorrent software have significantly increased in popularity nationwide in the past five years with some plaintiffs filing against thousands of defendants in a single action,[4] other plaintiffs filing against defendants in groups of roughly 10–100[5], and at least one plaintiff filing over one thousand cases against individual defendants.[6] The defendants are discovered and targeted by their internet provider (IP) addresses, which register on the BitTorrent tracker when they download the plaintiff's film. *Safety Point Products, LLC v. Does* describes the BitTorrent protocol well:

> BitTorrent is a program that enables users to share files via the internet. Unlike other "peer-to-peer" (P2P) file sharing networks that transfer files between users or between a user and a central computer server, BitTorrent allows for decentralized file sharing between individual users who exchange small segments of a file between one another until the entire file has been downloaded by each user. Each user that either uploads or downloads a file segment is known as a "peer." Peers that have the entire file are known as "seeds." Other peers, known as "leeches" can simultaneously download and upload the pieces of the shared file until they have downloaded the entire file to become seeds.
>
> Groups of peers that download and upload the same file during a given period are known as a "swarm," with each peer being

---

[3] I acknowledge counsel's underlined, bolded desire for oral argument on this issue, but counsel has briefed this issue extensively in the LHF cases I ruled on last month, and I have conducted my own extensive research on the subject. There are no "other concerns" that I "may raise" for counsel to address, so I find this matter suitable for disposition without oral argument. L.R. 78-1.

[4] *See, e.g.*, *Nu Image, Inc. v. Does 1–3,932*, 2012 WL 1890854 (M.D. Fl. May 10, 2012); *Entertainment v. Does 1–1,427*, 2012 WL 12897376 (E.D. Tex. Mar. 16, 2012).

[5] *See, e.g.*, *Combat Zone Corp. v. Does 1–192*, 2012 WL 12897164 (S.D. Tex. Oct. 12, 2012); *Sunlust Pictures, LLC v. Does 1–75*, 2012 WL 3717768 (N.D. Ill. Aug. 27, 2012); *Patrick Collins, Inc. v. John Does 1–54*, 2012 WL 911432 (D. Ariz. Mar. 19, 2012).

[6] *See Malibu Media, LLC v. Doe*, 2013 WL 6579338, at *4 n.4 and corresponding text (E.D. Wis. Dec. 12, 2013).

identified by a unique series of alphanumeric characters known as "hashtag" that is attached to each piece of the file. The swarm's members are relatively anonymous, as each participant is identifiable only by her Internet Provider (IP) address. Overseeing and coordinating the entire process is a computer or server known as a "tracker" that maintains a record of which peers in a swarm have which files at a given time. In order to increase the likelihood of a successful download, any portion of the file downloaded by a peer is available to subsequent peers in the swarm so long as the peer remains online.

But BitTorrent is not one large monolith. BitTorrent is a computer protocol, used by various software programs known as "clients" to engage in electronic file-sharing. Clients are software programs that connect peers to one another and distributes data among the peers. But a peer's involvement in a swarm does not end with a successful download. Instead, the BitTorrent client distributes data until the peer manually disconnects from the swarm. It is only then that a given peer no longer participates in a given BitTorrent swarm.[7]

CFH brought the instant case against 19 initially unidentified defendants. After learning their identities, CFH amended its complaint against 13 named defendants,[8] and then CFH proceeded to dismiss them from the case.[9] Only five defendants now remain: Felix Acosta, Luis Castaneda, Robrina Howard, Marvin Yap, and Pricz Tattoo (a business).

## Discussion

**A.    The swarm-joinder split of authority**

Joining multiple John/Jane Doe participants in a BitTorrent swarm into a single action is commonly referred to as "swarm joinder."[10] Because the defendants are initially unidentified, the plaintiff files an ex parte motion for expedited discovery to subpoena internet providers (ISPs)

---

[7] *Safety Point Products, LLC v. Does*, 2013 WL 1367078, at *1 (N.D. Ohio Apr. 4, 2013) (internal citations omitted).

[8] ECF No. 6.

[9] *See generally* docket report case 2:16-cv-01853-JAD-VCF.

[10] *See, e.g., Glacier Films (USA), Inc. v. Turchin*, 2016 WL 4251581, at *1 n.1 (D. Or. Aug. 10, 2016); *Malibu Media, LLC v. Reynolds*, 2013 WL 870618, at *12 (N.D. Ill. Mar. 7, 2013); *Patrick Collins, Inc. v. John Does 1 through 34*, 2013 WL 593445, at *2 (S.D. Cal. Feb. 13, 2013).

3

for the names and addresses of defendants associated with specified IP addresses. The motion raises two issues: (1) whether the defendants are properly joined; and (2) whether the court should permit the expedited discovery.[11] "Courts have dealt with the issue in several ways: denying the discovery requests, severing all but the first Doe defendants, delaying the severance decision until after the Does have been identified, or approving both joinder and pre-service discovery."[12]

The procedural posture of this case tracks the delay-severance-decision option. Magistrate Judge Ferenbach granted CFH's expedited discovery requests,[13] and I then ordered CFH to show cause why the identified defendants shouldn't be severed from the first defendant and dismissed in each of its cases.[14] After considering CFH's argument, I now determine whether the defendants were properly joined and whether severance is appropriate.

There is a major split of authority on this issue. Only one circuit court—the D.C. Circuit—has ruled on the issue, finding that swarm joinder does not satisfy FRCP 20(a)(2) because the defendants' use of the same BitTorrent protocol to download the same file does not arise out of the same transaction or occurrence.[15] The district courts in every other circuit and even the judges within some districts widely disagree on whether to permit swarm joinder. Some

---

[11] *See Riding Films, Inc. v. John Does I–CCL*, 2013 2152552, at *1 (D. Ariz. May 16, 2013).

[12] *Id.*; *see also Pac. Century Int'l, Ltd. v. Does 1–101*, 2011 WL 5117424, at *2 (N.D. Cal. Oct. 27, 2011) (denying request to issue subpoenas); *SBO Pictures, Inc. v. Does 1–3036*, 2011 WL 6002620, at *3–4 (N.D. Cal. Nov. 30, 2011) (severing all but the first Doe defendant and allowing discovery for him alone); *AF Holdings, LLC v. Does 1–97*, 2011 WL 2912909 (N.D. Cal. July 20, 2011) (denying discovery request and declining to sever); *Camelot Dist. Grp. v. Does 1–1210*, 2011 WL 4455249 (E.D. Cal. Sept. 23, 2011) (allowing discovery and delaying the question of severance); *Openmind Solutions, Inc. v. Does 1–39*, 2011 WL 4715200, at *5–8 (N.D. Cal. Oct. 7, 2011) (approving both joinder and pre-service discovery).

[13] ECF No. 5.

[14] ECF No. 23.

[15] *AF Holdings, LLC v. Does 1–1058*, 752 F.3d 990, 998 (D.C. Cir. 2014).

4

courts hold that swarm joinder is appropriate under FRCP 20(a)(2).[16] Other courts hold as the D.C. Circuit does.[17] And still others exercise their discretion to manage their dockets and sever the defendants even if swarm joinder would technically be permissible under the FRCP because other factors outweigh the benefits conferred by joinder: judicial economy, the high burden on the defendants, the risk of inappropriate settlement leverage, and filing-fee evasion.[18] The Ninth Circuit has not yet decided the issue, so I am not bound by any authority.

My exhaustive research on the issue uncovered no clear majority rule. The D.C. Circuit is the only circuit court to have addressed the issue (it doesn't allow swarm joinder),[19] 5 districts

---

[16] *See, e.g.*, *Elf-Man, LLC v. Does 1-29*, 2013 WL 3709235, at *2 (E.D. Wash. July 12, 2013); *Patrick Collins, Inc. v. Does*, 2012 WL 12870254, at *4–5 (N.D. Fl. Oct. 16, 2012).

[17] *See, e.g.*, *Night of the Templar, LLC v. Does 1–116*, 2013 WL 4504368, at *3 (E.D. Mo. Aug. 23, 2013); *Riding Films, Inc. v. John Does I–CCL*, 2013 WL 2152552, at *3 (D. Ariz. May 16, 2013); *West Coast Prods. v. Swarm Sharing Hash Files*, 2012 WL 3560809, at *4 (W.D. La. Aug. 17, 2012).

[18] *See, e.g.*, *Breaking Glass Pictures v. Swarm Sharing Hash File SHA1: £973F491D02C1E0220DBC534D8F8EDC15FC53FAEF*, 2013 WL 2407226, at *3 (D. Mass. May 1, 2013) (declining to decide whether swarm joinder satisfies Rule 20(a)(2) because joinder: (1) does not promote judicial efficiency considering each defendant may raise a unique defense or claim; (2) would be a logistical nightmare because "each defendant would be required to serve any motion or other submission on" every other defendant and all defendants "would have a right to be present at any deposition or court proceeding"; and (3) would defeat the purposes of the filing fee as a revenue raising measure and a barrier to meritless lawsuits); *Third Degree Films, Inc. v. Does 1–178*, 2012 WL 12925674, at *5 (N.D. Cal. Dec. 6, 2012) (holding that swarm joinder technically satisfies Rule 20(a)(2) but severing anyway because of the risk of inappropriate settlement leverage).

[19] *AF Holdings, LLC v. Does 1–1058*, 752 F.3d 990 (D.C. Cir. 2014).

permit swarm joinder under Rule 20(a)(2),[20] 12 districts do not,[21] 18 districts have judges on both sides of the debate,[22] and the remaining 58 districts have not addressed the issue. Within the

---

[20] *K-Beech, Inc. v. Doe 37*, 2012 WL 12910991 (E.D.N.C. June 12, 2012); *Combat Zone Corp. v. John/Jane Does 1–5*, 2012 WL 5289736 (N.D. Tex. Oct. 26, 2012); *Elf-Man, LLC v. Does 1–29*, 2013 WL 3709235 (E.D. Wash. July 12, 2013); *LHF Productions, Inc. v. Farwell*, 2016 WL 6948394 (W.D. Wash. Nov. 28, 2016); *Patrick Collins, Inc. v. Does*, 2012 WL 12870254 (N.D. Fl. Oct. 16, 2012).

[21] *AF Holdings, LLC v. Does 1–1058*, 752 F.3d 990 (D.C. Cir. 2014); *In re BitTorrent Adult Film Copyright Infringement Cases*, 296 F.R.D. 80 (E.D.N.Y. 2012); *Odin's Eye Entertainment v. Does 1–66*, 2013 WL 5890408 (D. Del. Oct. 31, 2013); *Malibu Media, LLC v. John Does 1–23*, 878 F. Supp. 2d 628 (E.D. Va. 2012); *West Coast Prods. v. Swarm Sharing Hash Files*, 2012 WL 3560809 (W.D. La. Aug. 17, 2012); *Malibu Media, LLC v. John Does 1–31*, 297 F.R.D. 323 (W.D. Mich. 2012); *reFX Audio Software Inc. v. Does 1–97*, 2013 WL 3766571 (E.D. Mo. July 16, 2013); *Third Degree Films, Inc. v. Does 1–131*, 280 F.R.D. 493 (D. Ariz. 2012); *Patrick Collins, Inc. v. Does*, 2012 WL 12893290 (C.D. Cal. Dec. 14, 2012); *Cobbler Nevada, LLC v. Cerritos*, 2016 WL 7177527 (D. Or. Dec. 9, 2016); *Raw Films, Inc. v. Does 1–32*, 2011 WL 6840590 (N.D. Ga. Dec. 29, 2011); *Voltage Pictures, LLC v. Does 1–31*, 291 F.R.D. 690 (S.D. Ga. 2013).

[22] *Compare Digital Sin, Inc. v. Does 1–45*, 2013 WL 1289263 (D. Mass. Mar. 28, 2013) (not allowing swarm joinder) *with Liberty Media Holdings, LLC v. Swarm Sharing Hash File*, 821 F. Supp. 2d 444 (D. Mass. 2011) (allowing swarm joinder); *compare Next Phase Distribution, Inc. v. John Does 1–27*, 284 F.R.D. 165 (S.D.N.Y. 2012) (not allowing) *with Digital Sin, Inc. v. Does 1–27*, 2012 WL 2036035 (S.D.N.Y. June 6, 2012) (allowing); *compare Malibu Media, LLC v. John Does 1–18*, 2014 WL 229295 (D. N.J. Jan. 21, 2014) (not allowing) *with Malibu Media, LLC v. John Does 1–11*, 2013 WL 1504927 (D. N.J. Apr. 11, 2013) (allowing); *compare Patrick Collins, Inc. v. Does 1–30*, 2013 WL 1157840 (E.D. Pa. Mar. 21, 2013) (not allowing) *with Patrick Collins, Inc. v. John Does 1–11*, 2013 WL 395497 (E.D. Pa. Jan. 31, 2013) (allowing); *compare K-Beech, Inc. v. John Does 1–41*, 2012 WL 773683 (S.D. Tex. Mar. 8, 2012) (not allowing) *with Combat Zone Corp. v. Does 1–192*, 2012 WL 12897164 (S.D. Tex. Oct. 12, 2012) (allowing); *compare Third Degree Films, Inc. v. John Does 1–72*, 2013 WL 1164024 (E.D. Mich. Mar. 18, 2013) (not allowing) *with Third Degree Films v. Does 1–36*, 2012 WL 2522151 (E.D. Mich. May 29, 2012) (allowing); *compare Killer Joe Nevada, LLC v. Does 1–12*, 2013 WL 3458197 (N.D. Ohio July 9, 2013) (not allowing) *with Voltage Pictures, LLC v. Does 1–43*, 2013 WL 1874862 (N.D. Ohio May 3, 2013) (allowing); *compare Dragon Quest Prods. v. Does 1–100*, 2013 WL 4811735 (E.D. Tenn. Sept. 9, 2013) (not allowing) *with Sojo Prods. v. Does 1–67*, 2013 WL 1759561 (E.D. Tenn. Apr. 24, 2013) (allowing); *compare In re BitTorrent Copyright Infringement Cases*, 2013 WL 501443 (C.D. Ill. Feb. 11, 2013) (not allowing) *with Patrick Collins, Inc. v. John Does 1–9*, 2012 WL 4321718 (C.D. Ill. Sept. 18, 2012) (allowing); *compare Malibu Media, LLC v. Reynolds*, 2013 WL 870618 (N.D. Ill. Mar. 7, 2013) (not

Ninth Circuit alone, the District of Arizona, the Central District of California, and the District of Oregon do not allow swarm joinder. The Eastern and Western Districts of Washington both permit swarm joinder under Rule 20. The Eastern, Northern, and Southern Districts of California have judges on both sides of the fence. And the Districts of Alaska, Hawaii, Idaho, Montana, and Nevada have not yet addressed the issue. The only thing that is firmly established about this issue is that there is no uniform protocol.

**B.    Rule 20(a)(2) does not permit swarm joinder.**

In similar cases filed by plaintiff's counsel over the film "London Has Fallen," I declined to decide whether Rule 20(a)(2) allowed swarm joinder because, even if it were permitted, swarm joinder would not benefit judicial economy.[23] Now, faced with another opportunity to consider the issue, I widen my stance and join those courts that hold that Rule 20 does not permit swarm joinder.

FRCP 20(a)(2) allows defendants to be joined if: (1) "any right to relief is asserted against

---

allowing) *with First Time Videos, LLC v. Does 1–76*, 276 F.R.D. 254 (N.D. Ill. 2011) (allowing); *compare TCYK, LLC v. Does 1–19*, 2013 WL 6578787 (N.D. Ind. Dec. 13, 2013) (not allowing) *with Malibu Media, LLC v. John Does 1–14*, 287 F.R.D. 513 (N.D. Ind. 2012) (allowing); *compare Malibu Media, LLC v. John Does 1–7*, 2012 WL 6194352 (E.D. Cal. Dec. 12, 2012) (not allowing) *with New Sensations, Inc. v. Does 1–306*, 2012 WL 5031651 (E.D. Cal. Oct. 17, 2012) (allowing); *compare Third Degree Films, Inc. v. Does 1–178*, 2012 WL 12925674 (N.D. Cal. Dec. 6, 2012) (not allowing) *with Braun v. Primary Distributor Doe Number 1*, 2013 WL 12142998 (N.D. Cal. Jan. 11, 2013) (allowing); *compare Third Degree Films, Inc. v. John Does 1–4*, 2013 WL 3762625 (S.D. Cal. July 16, 2013) (not allowing) *with Liberty Media Holdings, LLC v. Does 1–62*, 2012 WL 628309 (S.D. Cal. Feb. 24, 2012) (allowing); *compare PHE, Inc. v. Does 1–105*, 2013 WL 66506 (D. Colo. Jan. 4, 2013) (not allowing) *with Patrick Collins, Inc. v. John Does 1–15*, 2012 WL 415436 (D. Colo. Feb. 8, 2012) (allowing); *compare Malibu Media, LLC v. Doe*, 923 F. Supp. 2d 1339 (M.D. Fl. 2013) (not allowing) *with Nu Image, Inc. v. Does 1–3,932*, 2012 WL 1890854 (M.D. Fl. May 10, 2012) (allowing); *compare Liberty Media Holdings, LLC v. BitTorrent Swarm*, 277 F.R.D. 672 (S.D. Fl. 2011) (not allowing) *with AF Holdings, LLC v. Does 1–162*, 2012 WL 12845359 (S.D. Fl. Jan. 12, 2012) (allowing).

[23] *See LHF Productions, Inc. v. Kabala*, 2:16-cv-02028-JAD-NJK; *LHF Productions, Inc. v. Smith*, 2:16-cv-01803-JAD-NJK; *LHF Productions, Inc. v. Buenafe*, 2:16-cv-01804-JAD-NJK; *LHF Productions, Inc. v. Boughton*, 2:16-cv-01918-JAD-NJK; *LHF Productions, Inc. v. Wilson*, 2:16-cv-02368-JAD-NJK.

them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences;" and (2) "any question of law or fact common to all defendants will arise in the action."[24] And if the plaintiff "has not shown that the defendants satisfy the test for permissive joinder, a court may sever the misjoined parties, so long as no substantial right will be prejudiced by the severance."[25]

After identifying the unknown defendants, CFH amended its complaint and attached a summary of the defendants' IP addresses, home addresses, and the dates of their participation in the swarm.[26] CFH alleges that "each of the Defendants was part of a series of transactions over the course of a relatively short period of time, involving the exact same piece of the Plaintiff's copyrighted Work, and was accomplished by the Defendants acting in concert with each other."[27] But I do not find that downloading the same copyrighted movie with the same BitTorrent program over a "relatively short period of time" indicates that the defendants acted in concert with each other in the same series of transactions or occurrences.

The D.C. Circuit—the only circuit to have decided the issue—uses a particularly illustrative analogy to support its finding that Rule 20 does not permit swarm joinder:

> [T]wo BitTorrent users who download the same file months apart are like two individuals who play at the same blackjack table at different times. They may have won the same amount of money, employed the same strategy, and perhaps even played with the same dealer, but they have still engaged in entirely separate transactions. And simply committing the same type of violation in the same way does not link defendants together for the purposes of joinder.[28]

---

[24] FED. R. CIV. P. 20(a)(2).

[25] *Third Degree Films, Inc. v. Does 1–131*, 280 F.R.D. 493, 496 (D. Ariz. 2012) (quoting *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997)).

[26] ECF No. 6-1.

[27] ECF No. 6 at 5.

[28] *AF Holdings, LLC v. Does 1–1058*, 752 F.3d 990, 998 (D.C. Cir. 2014) (internal quotations and citations omitted).

8

CFH's exhibit provides the IP addresses, names, home addresses, and dates and times of participation for 13 individuals.[29] Plotting those home addresses on a map of Las Vegas shows that the defendants lived in all corners of Las Vegas with two of them living in Henderson. Their dates of participation span six days.[30] Three participated on June 10, 2016, four on June 12, another four on the 13th, then one each on the 14th and 15th.[31] And even the participants on June 10th, for example, participated in the swarm at 3:08 p.m., 8:11 p.m., and 9:14 p.m.[32] None of this data suggests to me that these identified defendants acted in concert as part of the same transaction or occurence. I thus hold that Rule 20(a)(2) does not permit swarm joinder, and I sever and dismiss the claims against all defendants other than Felix Acosta.

**C.    Motion for default judgment**

CFH also moves for default judgment against defendants Acosta, Castaneda, Howard, Yap, and Pricz Tattoo.[33] Because I sever and dismiss the claims against Castaneda, Howard, Yap, and Pricz Tattoo from this action for improper joinder, the motion is moot against them, and I deny it for that reason. I now address the motion as it pertains to defendant Acosta only.

***1.    Background***

After identifying Acosta on August 31, 2016, CFH sent a demand letter informing Acosta of this case and his potential liability.[34] Acosta did not respond, so CFH sent him a second demand letter approximately three weeks later.[35] CFH filed its first-amended complaint in

---

[29] ECF No. 6-1.

[30] *Id.*

[31] *Id.*

[32] *Id.*

[33] ECF No. 21.

[34] *Id.* at 4.

[35] *Id.*

November 2016 and sent Acosta a third demand letter.[36] Despite adequate service of process, Acosta did not respond to the first-amended complaint or demand letter.[37] The Clerk of Court entered default against Acosta on July 19, 2017.[38] CFH now moves for default judgment, requesting $15,000 in statutory damages, $3,537.50[39] in attorney's fees and costs, and a permanent injunction to prohibit Acosta from further infringing its copyright directly or indirectly.[40]

### 2. *Default-judgment standard*

Federal Rule of Civil Procedure 55(b)(2) permits a plaintiff to obtain default judgment if the clerk previously entered default based on a defendant's failure to defend. After entry of default, the complaint's factual allegations are taken as true, except those relating to damages.[41] "[N]ecessary facts not contained in the pleadings, and claims [that] are legally insufficient, are not established by default."[42] The court has the power to require a plaintiff to provide additional proof of facts or damages in order to ensure that the requested relief is appropriate.[43] Whether to grant a motion for default judgment lies within the court's discretion,[44] which is guided by the

---

[36] *Id.*

[37] *Id.*

[38] ECF No. 19.

[39] Counsel moves for $3,575.50 in combined fees and costs, but his math is incorrect. He charges $375.00 per hour for his services, has dedicated 7.3 hours to the case, and has spent $800 in costs. $375.00 * 7.3 hours = $2,737.50; $2,737.50 + $800 = $3,537.50.

[40] ECF No. 21.

[41] *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (per curiam); FED. R. CIV. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied.").

[42] *Cripps v. Life Ins. Co.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

[43] *See* FED. R. CIV. P. 55(b)(2).

[44] *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986).

seven factors outlined by the Ninth Circuit in *Eitel v. McCool*:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.[45]

A default judgment is generally disfavored because "[c]ases should be decided upon their merits whenever reasonably possible."[46]

### 3. *Evaluating the Eitel factors*

#### a. *Possibility of prejudice to CFH*

The first *Eitel* factor weighs in favor of granting default judgment against Acosta. CFH sent Acosta numerous demand letters and a summons along with the first-amended complaint, but Acosta never responded. CFH claims that Acosta infringed its copyright by downloading its film using BitTorrent software. Given the nature of BitTorrent software, Acosta may be exacerbating CFH's injury by continuing to seed the file to the BitTorrent swarm.

#### b. *Substantive merits and sufficiency of the claims*

The second and third *Eitel* factors require CFH to demonstrate that it has stated a claim on which it may recover.[47] The first-amended complaint sufficiently pleads CFH's direct-copyright-infringement, contributory-copyright-infringement, and vicarious-liability claims.

To present a prima facie case of direct infringement, CFH must show that: (1) it owns the allegedly infringed material, and (2) the alleged infringers violate at least one exclusive right granted to copyright holders under 17 U.S.C. § 106.[48] CFH alleges that it is the owner of the

---

[45] *Eitel*, 782 F.2d at 1471–72.

[46] *Id.* at 1472.

[47] *See Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978).

[48] *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001).

copyright registration for the film "The Cell."[49] CFH also alleges that Acosta willfully violated several exclusive rights granted by 17 U.S.C. § 106, and that those violations caused it to suffer damages.[50]

The contributory-copyright-infringement claim requires CFH to allege that Acosta "had knowledge of the infringing activity" and "induce[d], cause[d,] or materially contribute[d] to the infringing conduct of another."[51] "Put differently, liability exists if the defendant engages in personal conduct that encourages or assists the infringement."[52] Given the nature of BitTorrent technology, BitTorrent-swarm participants who download files compulsorily upload those same files so that other participants may download them at a faster rate. Accordingly, CFH's allegation that each defendant is a contributory copyright infringer *because* they participated in a BitTorrent swarm[53] is sufficient to satisfy the induced-caused-or-contributed requirement. CFH satisfies the remaining requirements by alleging that each defendant knew or should have known that other BitTorrent-swarm participants were directly infringing on CFH's copyright by downloading the files that they each uploaded.[54]

CFH also claims that each defendant, as the account holder for the Internet service, is vicariously liable for any infringing activity conducted by other users on its Internet connection.[55]

---

[49] ECF No. 6 at 6, ¶ 11; *see also* ECF No. 6-2.

[50] ECF No. 6 at 11–12.

[51] *A&M Records*, 239 F.3d at 1019 (quoting *Gershwin Publ'g Corp. v. Columbia Artists Mgmt.*, 443 F.2d 1159, 1162 (2d Cir. 1971) and citing *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996)).

[52] *Id.* (quoting *Matthew Bender & Co. v. West Publ'g Co.*, 158 F.3d 693, 706 (2d Cir. 1998)).

[53] ECF No. 6 at 12, ¶ 56.

[54] *Id.* at 12–13, ¶¶ 58–61.

[55] *Id.* at 14.

"Vicarious infringement is a concept related to, but distinct from, contributory infringement."[56] "To state a claim for vicarious copyright infringement, [CFH] must allege that [Acosta] had (1) the right and ability to supervise the infringing conduct and (2) a direct financial interest in the infringing activity."[57]

CFH's allegations satisfy the first prong of the vicarious-infringement test. As the court discussed in *Dallas Buyers Club, LLC v. Doughty*, "the Internet service account holder, appea[rs] to have had exclusive control over use of the Internet service" and the account holder "could have simply secured access to the Internet by creating a password or by changing an already existing password."[58] "Thus, . . . [the account holder] had the capacity to terminate use of his Internet service by any infringing third party if he believed it was being used to violate applicable law."[59]

CFH also satisfies the direct-financial-interest prong. "The essential aspect of the direct financial benefit inquiry is whether there is a causal relationship between the infringing activity and any financial benefit a defendant reaps, regardless of how substantial the benefit is in proportion to a defendant's overall profits."[60] "Financial benefit exists where the availability of infringing material acts as a 'draw' for customers."[61] "The size of the 'draw' relative to a defendant's overall business is immaterial. A defendant receives a 'direct financial benefit' from a third-party infringement so long as the infringement of third parties acts as a 'draw' for customers 'regardless of *how substantial* the benefit is in proportion to a defendant's overall

---

[56] *Perfect 10, Inc. v. Visa Intern. Service Ass'n*, 494 F.3d 788, 802 (9th Cir. 2007).

[57] *Id.*

[58] *Dallas Buyers Club, LLC v. Doughty*, 2016 WL 1690090 (D. Or. Apr. 27, 2016).

[59] *Id.* (citing *A&M Records*, 239 F.3d 1004).

[60] *Perfect 10, Inc. v. Giganews, Inc.*, 2014 WL 8628031, at *3 (C.D. Cal. Nov. 14, 2014) (quoting *Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004)).

[61] *A&M Records*, 239 F.3d at 1023.

profits.'"[62] CFH alleges that Acosta benefitted from third-party infringement by viewing "The Cell" without paying for it.[63] The law is clear that it doesn't matter how large the financial benefit is: by watching the BitTorrent-downloaded film, Acosta saved the cost of a movie ticket, and that is a direct financial benefit.

I therefore find that CFH sufficiently pled each of its claims in the first-amended complaint. I also find that CFH's claims have substantive merit, subject to any defenses that Acosta could raise.

### c. Sum of money at stake

The sum-of-money factor requires me to consider "the amount of money at stake in relation to the seriousness of [Acosta]'s conduct."[64] "If the sum of money at stake is completely disproportionate or inappropriate, default judgment is disfavored."[65] CFH asks for statutory damages and attorney's fees and costs.

For statutory damages, CFH requests $15,000 under 17 U.S.C. § 504(c).[66] The statute sets a $750 minimum and a $30,000 maximum award of damages for copyright infringement,[67] and that maximum can be increased up to $150,000 where the infringement was willful.[68] I have "wide discretion in determining the amount of statutory damages to be awarded, constrained only

---

[62] *Perfect 10*, 2014 WL 8628031, at *3 (quoting *Ellison*, 357 F.3d at 1079).

[63] ECF No. 6 at 14, ¶ 68. There are two ¶ 67s and two ¶ 68s in CFH's motion for default judgment. I cite to the second ¶ 68.

[64] *Twentieth Century Fox Film Corp. v. Streeter*, 438 F. Supp. 2d 1065, 1071 (D. Ariz. 2006) (quoting *PepsiCo, Inc. v. California Security Cans*, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002)).

[65] *Twentieth Century Fox*, 438 F. Supp. 2d at 1071.

[66] ECF No. 21 at 8, 12.

[67] 17 U.S.C. § 504(c)(1) (2012).

[68] 17 U.S.C. § 504(c)(2) (2012).

by the specified maxima and minima."[69]

Given Acosta's numerous opportunities to respond to CFH's demand letters, first-amended complaint, and this motion, coupled with CFH's unopposed allegations that I take as true, the factual showing before me indicates that Acosta is a willful copyright infringer. But, I do not find that $15,000 is necessary to compensate CFH for its injury and to deter Acosta and other BitTorrent users. Although I acknowledge that other courts have awarded $15,000 for the same offense, I am not persuaded by their actions. After considering the lost-profits movie ticket sales, the cost of identifying infringers and pursuing litigation, and the boundaries provided by § 504(c), I determine that $1,500 is the appropriate damage award. This amount—187.5 times as much as the average $8.00 per movie ticket suggested by CFH[70]—adequately accomplishes the goals of § 504(c) to protect copyrighted works and deter infringement. This amount is also not excessive because it is only 1% of the statutory maximum for willful infringement.

The Copyright Act also allows courts to award the recovery of full costs and reasonable attorney's fees to the prevailing party as part of those costs.[71] CFH, in applying the lodestar method,[72] moves for $2,737.50 in attorney's fees[73] and $800 in costs, for a total of $3,537.50. The total sum of money at stake, then, is $5,037.50, and I find that this factor weighs in favor of default judgment.

        *d.      Possibility of a dispute concerning material facts*

Next, I consider the possibility that material facts are disputed. CFH adequately alleged

---

[69] *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336 (9th Cir. 1990) (quoting *Harris v. Emus Records Corp.*, 738 F.2d 1329, 1335 (9th Cir. 1984)).

[70] ECF No. 24-1 at 9 n.3. Although this cited footnote is in a memorandum of points and authorities that was originally drafted for a separate case (involving the exact same claims and issues for another plaintiff), counsel attached and incorporated the memorandum to this motion. ECF No. 24 at 2.

[71] 17 U.S.C. § 505 (2012).

[72] *See Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 978 (9th Cir. 2008).

[73] This number is based on a rate of $375.00 per hour for 7.3 hours.

three copyright-infringement claims against Acosta. Acosta failed to appear or otherwise respond, so he admitted as true all of the material facts alleged in CFH's complaint. Because those facts are presumed true and Acosta failed to oppose this motion, no factual disputes exist that would preclude the entry of default judgment against him.

    e. *Excusable neglect*

Under this factor, I consider whether Acosta's default may have resulted from excusable neglect. CFH sent Acosta two demand letters several weeks prior to filing its first-amended complaint. Acosta did not respond to either of them. Then CFH filed its first-amended complaint on November 11, 2016, and sent Acosta a third demand letter. He did not respond to that letter either. CFH served Acosta with process on February 3, 2017, and Acosta failed to appear or file an answer to the first-amended complaint. Five and a half months later, CFH moved for default judgment and Acosta, once again, did not respond. Acosta has demonstrated a habit of ignoring CFH, so I can only conclude that his default was not the product of excusable neglect. This factor thus weighs in favor of entering default judgment.

    f. *Favoring decisions on the merits*

"Generally, default judgments are disfavored because cases should be decided upon their merits whenever reasonably possible."[74] Because Acosta has failed to respond to anything at all in this action, it is not possible to decide this case on its merits, so this factor, too, weighs in favor of default judgment. As every factor weighs in favor of entering default judgment, I grant CFH's motion as it pertains to Acosta.

  **4.** ***Permanent injunction***

As its final claim for relief, CFH asks for a permanent injunction enjoining Acosta from "directly or indirectly infringing [its] rights" over its film "including[,] without limitation[,] using the Internet to reproduce, to distribute, to copy, or to publish the motion picture."[75] The

---

[74] *Twentieth Century Fox*, 438 F. Supp. 2d at 1072 (quoting *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986)).

[75] ECF No. 21 at 13.

16

Copyright Act allows me to "grant temporary and final injunctions on such terms as [I] may deem reasonable to prevent or restrain infringement of a copyright."[76] The Supreme Court held in *eBay Inc. v. MercExchange, L.L.C.* that a plaintiff must satisfy a four-factor test to receive a permanent injunction in a patent-infringement case.[77] CFH must demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."[78] This test also applies to copyright-infringement cases.[79]

CFH argues that "[m]onetary damages alone are simply inadequate" because "absent injunctive relief to force the deletion of each torrent file from the Defendants' computers . . . infringement will continue unabated in exponential fashion."[80] Because Acosta is the only remaining defendant after my severance and dismissal of Castaneda, Howard, Yap, and Pricz Tattoo, I only consider whether monetary damages are sufficient to deter Acosta's infringing activity. I conclude that a monetary judgment of $5,037.50 is likely to sufficiently deter Acosta from infringing CFH's copyright, so CFH fails to satisfy the second factor of the permanent-injunction test, and I deny its request for injunctive relief.

## Conclusion

Accordingly, IT IS HEREBY ORDERED that all claims against defendants Castaneda, Howard, Yap, and Pricz Tattoo are **SEVERED AND DISMISSED** from this case without prejudice to CFH's ability to bring these claims in new, separate actions.

---

[76] 17 U.S.C. § 502(a) (2012).

[77] *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

[78] *Id*.

[79] *Flexible Lifeline Systems, Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 995–96 (9th Cir. 2011).

[80] ECF No. 21 at 11.

IT IS FURTHER ORDERED that CFH's motion for default judgment **[ECF No. 21]** is **DENIED as moot** with respect to Castaneda, Howard, Yap, and Pricz Tattoo and **GRANTED** with respect to Acosta. I award CFH $1,500 in statutory damages and $3,537.50 in reasonable attorney's fees and costs for a total of $5,037.50. I decline to issue a permanent injunction against Acosta.

**The Clerk of Court is directed to ENTER JUDGMENT in favor of Cell Film Holdings LLC and against Felix Acosta in the total amount of $5,037.50 and CLOSE THIS CASE**.

DATED: November 29, 2017.

_____
U.S. District Judge Jennifer A. Dorsey